IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JIANG LU, | ) | CASE NO. 3:13 CV 2832 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| U.S. ICE, | ) | |
| | ) | |
| Respondent. | ) | |

*Pro se* Petitioner Jiang Lu filed the above-captioned action under 28 U.S.C. § 2241 against the United States Department of Immigration and Customs Enforcement ("ICE"). He is currently being detained in the Seneca County Jail pending deportation. Petitioner contends he has been detained more than 180 days. He asks this Court to "[e]nsure that everything possible is being done... ." (ECF No. 1 at 8).

**Factual and Procedural Background**

The Petition is very brief. It contains no factual allegations and no particular legal claims. He indicates he is challenging his detention pending removal. As his only ground for relief, he simply states, "Deportation ordered over 180 days ago." (ECF No. 1 at 2). He indicates he received a decision from the Immigration Court on June 10, 2013, and did not appeal this decision.

## Standard of Review

Writs of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting Section 2241(c)). Federal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal. *Demore v. Kim*, 538 U.S. 510, 517-18 (2003). Because Petitioner is appearing *pro se*, the allegations in his Petition must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, this Court may dismiss the Petition at any time, or make any such disposition as law and justice require, if it determines the Petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *see also Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (holding district courts have a duty to "screen out" petitions lacking merit on their face under Section 2243).

## Detention of Aliens

Under 8 U.S.C. § 1226, the Attorney General may arrest and detain an alien pending a decision on whether the alien is to be removed from the United States ("the pre-removal period"). During the pre-removal period, detention without release on bond is mandatory for certain classes of noncitizens. *See* 8 U.S.C. § 1226(c)(1) and (2). The pre-removal period begins when the petitioner is taken into ICE custody and continues until he receives an administratively final order of removal. An order of removal becomes administratively final upon "a determination by the Board

of Immigration Appeals affirming such order." 8 U.S.C. § 1101(a)(47)(B).

After the order of removal becomes administratively final, the Attorney General "shall detain the alien" during the 90-day removal period[1] under 8 U.S.C. § 1231(a)(2). *See Zadvydas v. Davis*, 533 U.S. 678, 683 (2001); *see also Morales–Fernandez v. I.N.S.*, 418 F.3d 1116, 1123 (10th Cir.2005). The Government generally is required to remove an alien in its custody within the 90-day removal period. *See* 8 U.S.C. § 1231(a)(1)(A)-(B).

The Government may, however, detain an inadmissible or criminal alien beyond the statutory removal period. *See* 8 U.S.C. § 1231(a)(6). The Government's ability to detain an alien under this provision is not unlimited. *Zadvydas*, 533 U.S. at 699. To avoid a "serious constitutional threat," the Supreme Court interpreted the post-removal-period detention statute to prohibit continued detention "once removal is no longer reasonably foreseeable...." *Id.* Detention of an alien subject to a final order of removal for up to six months is presumptively reasonable given the time needed to accomplish the removal. *Id.* at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. Detention beyond six months, however, does not, by itself, mean that the alien must be released. *Id.*

In *Zadvydas*, the Supreme Court considered the plight of two aliens with criminal records, Zadvydas and Ma, who faced "potentially permanent" civil confinement. *Id.* at 684-86, 691. Zadvydas, the child of Lithuanian parents, was born in a displaced persons camp in Germany in 1948. *Id.* at 684. After his most recent conviction, he was released on parole, taken into INS

---

[1] *See* 8 U.S.C. § 1231(a)(1) (stating that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

custody and ordered deported to Germany in 1994. *Id.* However, neither Germany nor Lithuania would accept him. *Id.* Ma was born in Cambodia in 1977. *Id.* at 685. He was convicted of manslaughter, served two years in prison, and was released to INS custody. *Id.* When his 90-day removal period expired in 1999, the INS kept him in custody (in part due to his former gang membership and the nature of his crime). The lower court determined that there was no realistic chance that Cambodia would accept Ma, given the lack of a repatriation agreement between Cambodia and the United States. *Id.* at 686. The Supreme Court held that the removal period statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689. "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The Court went on to hold that a period of six months was recognized as a "presumptively reasonable period of detention." *Id.* at 701. If, after six months, the alien provides a good reason to believe there is no significant likelihood of deportation in the reasonably foreseeable future, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Id.* This, however, does not mandate the release of every alien after six months. An alien may still be detained beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Since *Zadvydas* came down, the Supreme Court has clarified that the *Zadvydas* due process analysis applies only if a danger of indefinite detention exists and there is no significant likelihood of removal in the reasonably foreseeable future. In *Demore v. Kim*, 538 U.S. 510, 531 (2003), the Court approved the mandatory detention of a criminal alien during removal proceedings under 8

U.S.C. § 1226(c) even in the absence of an individualized finding that the alien was unlikely to appear for his removal hearing if released on bond. The Court distinguished *Zadvydas* on two independent grounds. First, in *Zadvydas*, "removal was 'no longer practically attainable,'" whereas it was attainable in Kim's case. *Id.* at 527-28 (quoting *Zadvydas*, 533 U.S. at 690). Second, in *Zadvydas*, the period of detention at issue was "'indefinite' and 'potentially permanent.'" *Kim*, 538 U.S. at 528 ( quoting *Zadvydas*, 533 U.S. at 690-91). By contrast, Kim had not demonstrated that there was a real danger of indefinite or permanent detention, and it was therefore premature to apply the due process analysis. *Id.* at 529. Merely alleging that a date for travel has not yet been set, is insufficient to demonstrate indefinite detention.

The *Zadvydas* holding prompted the DHS to issue regulations addressing the criteria established by the Court. See 8 C.F.R. § 241.4. Thus, before the 90 day removal period expires, the District Director shall conduct a custody review for an alien where the alien's removal cannot be accomplished during the prescribed period. 8 C.F.R. § 241.4(k)(1)(i). If the alien's release is denied pending removal, the District Director may retain responsibility for custody determinations for up to three months, or refer the alien to the HQ POCRU for further custody review. 8 C.F.R. § 241.4(k)(1)(ii).

In this case, it is difficult to determine when the deportation order became administratively final. A letter attached as an exhibit to the Petition indicates Petitioner was ordered removed from the United States to China by an Immigration Judge on June 10, 2013. He does not allege whether he appealed that decision to the Board of Immigration Appeals. His detention during his pre-removal period, which extended from the date he was taken into ICE custody until his the date his administrative order became final, presumably June 10, 2013, was governed by 8 U.S.C. §

1226(c)(1) and (2). If his order of removal became administratively final on June 10, 2013, the 90-day removal period began on that date. Detention during the removal period was required under 8 U.S.C. § 1231(a)(2). His removal period expired on December 10, 2013.

Petitioner's detention in the post removal period from December 10, 2013 until the present date is governed by 8 U.S.C. § 1231(a)(6), which authorizes the Attorney General to detain a removable alien indefinitely beyond the removal period but only for a period reasonably necessary to secure the alien's removal. The Court must now determine whether, like Zadvydas, removal for Petitioner is "no longer practically attainable" resulting in a period of detention that is "indefinite" and "potentially permanent." Zadvydas, 533 U.S. at 690-91. Based on the allegations in the Petition (Doc. 1) and the Supplemental Brief (Doc. 3), Petitioner failed to demonstrate that this is the case.

Petitioner received a written Decision to Continue Detention from ICE in September 2013. That document indicated that ICE requested travel documents on his behalf from the Chinese Consulate in New York and believed those travel documents would be issued in the near future. Petitioner received a second Decision to Continue Detention from the HQ POCRU, dated December 20, 2013. That document indicated ICE was working with the government of China to procure a travel document for his return. He was told his removal to China was expected to occur in the reasonably foreseeable future. and he would therefore remain in ICE custody at that time. He was notified that the decision did not preclude him from bringing evidence in the future to demonstrate good reason what his removal is unlikely.

At this point, nothing in the Petition suggests that Petitioner's continued detention is unconstitutional. He has given no indication that China will refuse to issue travel documents and that his removal is no longer attainable. He fails to allege facts suggesting his detention will be

"indefinite" and "potentially permanent." Zadvydas, 533 U.S. at 690-91. Petitioner may be detained for a period reasonably necessary to secure his removal. His due process claims are therefore premature.

### Conclusion

Accordingly, the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is denied and this action is dismissed pursuant to 28 U.S.C. § 2243 without prejudice to any petition Mr. Jiang may file in the future regarding his continued detention by ICE. Further, the Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: May 15, 2014